UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SIMON, | No. C 07-06202 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| TOSHIBA AMERICA, | Re: Motion for Final Approval of Settlement; Motion for Attorneys' Fees, Costs and Incentive Award |
| Defendant. | |

   Michael Simon ("plaintiff") filed this class action alleging that defendant advertised their notebook computers as having the capacity to upgrade their Random Access Memory ("RAM") to 4 gigabytes when, in fact, the maximum amount of RAM upgrade capacity was substantially less. Docket No. 1 (Compl.) ¶ 2. On August 31, 2009, the court preliminarily approved a Class Action Settlement Agreement. Docket No. 38 (Order Granting Conditional Approval) ¶ 6. Now before the court is plaintiff's unopposed motion for final approval of the settlement agreement and unopposed motion for award of attorneys' fees, costs and an incentive award for the plaintiff. Having considered the parties' arguments and submissions, and for the reasons discussed below, the court enters the following memorandum and order.

BACKGROUND

   Pursuant to the terms of the settlement agreement, class members, which includes all individuals who purchased specified Toshiba computer models, are entitled to relief under the

Motherboard Replacement Program or Credit Voucher Program. Docket No. 30-1 (Talley Dec.), Exh. A (Settlement Agreement) at 5 & 7. Those participating in the Motherboard Replacement Program "may elect to have either a motherboard replacement, or a motherboard replacement and RAM installation." *Id.* at 5. "The new motherboard will ensure that the Subject Notebooks allow for the expansion of RAM to four gigabytes." *Id.* Class counsel claims that the estimated value of a new motherboard along with the costs to replace it are approximately $425. Docket No. 46 (Mot. for Final Approval) at 7.

Settlement class members who do not wish to participate in the Motherboard Replacement Program may instead participate in the Credit Voucher Program and receive a $35 credit voucher redeemable for the purchase of any merchandise available on www.toshibadirect.com. Settlement Agreement at 7. In addition, class members "with proof sufficient to establish that they incurred out-of-pocket expenses paid to" defendant or a Toshiba-authorized service provider "prior to December 31, 2008, for an unsuccessful attempt to upgrade their Subject Computers to four gigabytes of RAM may be entitled to reimbursement for their reasonable costs incurred, not to exceed $150." *Id.* at 8.

According to the claims administrator, the potential settlement class consists of 25,350 members. Docket No. 44 (Keough Dec.) ¶ 5. Between September 30, 2009, and October 9, 2009, the claims administrator made attempts by email and standard mail to contact the potential class members and provide them with the settlement notice. *Id.* ¶¶ 7-9 In addition, the claims administrator established a 24-hour, toll-free helpline through which individuals can receive additional information about the settlement. *Id.* ¶ 11. Finally, the claims administrator established a website, www.SateliteRAMSettlement.com, where class members can fill out and submit claims forms. *Id.* ¶ 12. As of January 3, 2010, the claims administrator had received 538 claims from potential class members, although none of those claims had been validated as of that date. *Id.* ¶ 10. Although the claims period has not yet ended, assuming that all 538 respondents are entitled to recover from Toshiba, it would represent an approximately 2% response rate. Plaintiff has not presented any information regarding how many individuals elected for the motherboard replacement

2

or for the $35 voucher. At the close of the opt-out period, December 8, 2009, only four potential class members requested that they be excluded from the settlement.

In its motion for attorneys' fees and costs, class counsel seeks total reimbursement of $250,000 and an incentive award for the class representative of $4,000. *Id.* at 12. Although class counsel did not initially submit contemporaneous time keeping records in support of its motion for attorneys' fees, *see* Docket No. 49 (Tamblyn Dec.), Exhs. A & B (Wexler Wallace LLP Fees and Costs); Docket No. 50 (Talley Dec.), Exh. E (Kershaw, Cutter & Ratinoff LLP Fees and Cost), at the hearing on this motion, class counsel submitted detailed documentation of the work performed on this case. According to these records three attorneys at Kershaw, Cutter & Ratinoff collectively devoted 235.05 hours to this case, incurring a total of $88,897.50 in fees and $10,506.79 in costs. Five attorneys and three paralegals from Wexler Wallace spent 290.40 hours working on this case, incurring fees of $115,309.50 and costs of $22,088.35. Combined, according to class counsel's records, class counsel accrued $204,207 in attorneys' fees and $32,595.14 in costs, for a total compensable amount of $236,769.14.

LEGAL STANDARD

I. Final Settlement Approval

In deciding whether to approve of a settlement, the court must determine if the settlement terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court's inquiry into a consensual agreement negotiated by the parties should seek only to ensure that the settlement is fair, reasonable and adequate and not the result of fraud, over-reaching or collusion. *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

II. Attorneys' Fees and Costs

Federal Rule of Civil Procedure 23(h) allows the court to award reasonable attorneys' fees and costs according to the agreement of the parties. Fed. R. Civ. P. 23(h). "[W]hether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment . . . are fair and proper." *Zucker v.*

1  *Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999).  In common fund cases, the
2  district court has the discretion to use either a percentage-of-the-recovery method or lodestar method
3  to calculate reasonable attorneys' fees.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d
4  1291, 1296 (9th Cir. 1994).  When attorneys' fees are to be paid from a common settlement fund,
5  "the relationship between plaintiffs and their attorneys turns adversarial" and "the district court must
6  assume the role of fiduciary for the class plaintiffs."  *WPPSSSL*, 19 F.3d at 1302.  It thus becomes
7  crucial for the court to scrutinize the attorneys' request in light of their role in the litigation.

8        Under the percentage-of-the-recovery method, the attorneys' fees are calculated as a
9  percentage of the common fund, with 25% established as the benchmark in the Ninth Circuit.
10  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under the lodestar method, the
11  lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel
12  by a reasonable hourly rate.  *Id.* at 1029 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  The
13  lodestar may then be adjusted up or down by an appropriate multiplier, based on factors not
14  subsumed in the initial calculation of the lodestar.  *See Purdue v. Kenny A.*, No. 08-970, ___ S. Ct.
15  ___, 2010 WL 1558980, at *7 (Apr. 21, 2010).  Importantly, "[t]he party seeking an award of fees
16  should submit evidence supporting the hours worked and rates claimed" and the court may reduce
17  the award where documentation is inadequate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

18        In addition, while there is a strong presumption that lodestar fees are reasonable, *City of*
19  *Burlington v. Dague*, 505 U.S. 557, 562 (1992), the California Supreme Court recently upheld a trial
20  court's discretion to deny attorneys' fees altogether in an action brought under the California Fair
21  Employment and Housing Act ("FEHA").  *See Chavez v. City of L.A.*, 47 Cal. 4th 970 (Cal. Jan. 14,
22  2010).  The court reiterated that under California law, " 'a reduced fee award is appropriate when a
23  claimant achieves only limited success,' " *id.* at 989 (quoting *Sokolow v. County of San Mateo*, 213
24  Cal. App. 3d 231, 249 (1989)) (citations omitted), and noted agreement with federal case law
25  holding that "the extent of a plaintiff's success is a crucial factor" when determining attorneys' fees
26  in civil rights actions, *id.*  Accordingly, attorneys' fees must be " 'reasonable in relation to the
27  results obtained.' "  *Id.* (quoting *Hensley*, 461 U.S. at 440).

28

4

## DISCUSSION

### I. Final Settlement Approval

The terms of the settlement agreement are "fair, reasonable, and adequate." In order to make whole individuals who purchased affected Toshiba computer models, Toshiba has offered potential class members a choice between a $35 voucher and a replacement motherboard. The structuring of the settlement allows those who desire a motherboard that accords with their purchase expectations to upgrade their computer, and permits those who did not rely on Toshiba's representations regarding the expandability of RAM to recover a smaller amount for future purchases. The negotiations regarding the settlement were conducted at arms length by experienced counsel. The litigation is still in its early stages, with settlement occurring before any dispositive motions or extensive discovery. Although plaintiff likely had a strong case, the litigation was not without risks. Specifically, plaintiff might have faced significant hurdles at the class certification stage in establishing that the entire class at issue relied upon Toshiba's statements regarding the ability to expand the RAM in its computers. Further, there has only been four potential class members out of more than 25,000 who elected to opt-out of the settlement. Taking all of these factors into consideration, plaintiff's motion for final approval of the settlement agreement is GRANTED.

### II. Attorneys' Fees

As is discussed above, class counsel seeks $250,000 in total reimbursement. After subtracting the $32,595.14 in costs accrued by class counsel, class counsel apparently seeks $217,404.86 in attorneys' fees. This amount is in excess, albeit only slightly, of the $204,207 lodestar produced by class counsel's contemporaneous time records, and would require applying a multiplier of 1.06.

Given the difficulty of measuring the value of the settlement at issue in this case—both because the claims period is not yet complete and because each claimant has a choice between a $35 voucher or a replacement motherboard, valued at $425—the court elects to utilize the lodestar method in order to determine an appropriate amount of attorneys' fees for class counsel.

5

A.  Lodestar Method

  1.  Reasonableness of Hours

Class counsel calculated the lodestar amount based on 525.45 hours expended on this action. These hours are amply documented and, upon review by the court, are reasonable.

  2.  Reasonableness of Hourly Rates

Reasonable hourly rates are determined by reference to the prevailing market rates charged by comparable attorneys in the relevant community. *Davis v. City of S.F.*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Generally, the forum district is the relevant community. *See Gates v. Deukmejian*, 987 F.2d 1395, 1405 (9th Cir. 1992). The Northern District of California is thus the relevant community for this action.

The two law firms calculated the lodestar amount based on different hourly rates. Wexler, Wallace requests rates of $560 an hour and $447.88 an hour for partners Kenneth A. Wexler and Mark J. Tamblyn respectively, rates of $287.99, $261.41 and $375 an hour for associates Amber M. Nesbitt, Ian J. Barlow and Sharlene P.B. Hobson respectively, and rates of $150 an hour for paralegals. *See* Wexler Wallace LLP Fees and Costs. Kershaw, Cutter & Ratinoff requests rates of $425 an hour for partner Stuart C. Talley, $210 an hour for associate Marilyn J. Thompson, and $250 for associate Ian M. Hunter. *See* Kershaw, Cutter & Ratinoff Fees and Costs; *see also* Docket No. 50 (Talley Dec.), Exh. F (Kershaw, Cutter & Ratinoff Firm Profile); http://www.kcrlegal.com/attorneys/hunterbio.asp.

Recently, the court in *Suzuki v. Hitachi*, CV-06-07289, a class action also involving misrepresentation of the quality of computer hardware, approved rates of $650 for the partner attorney, $500 for the associate attorney, and $150 for the paralegals. As such, the court finds the requested rates in the present case to be reasonable. Application of these rates to the lodestar calculation results in a lodestar amount of $204,207.

However, an attorneys' fee award may be reasonable even if it is less than the lodestar amount. *See Tarlecki v. bebe Stores, Inc.*, No. 05-1777, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009) (Patel, J.). In the case at bar, only two percent of the potential class submitted claims against

6

Toshiba. The court finds that the extremely low response rate warrants a downward departure. As such, the court, within its discretion, awards attorneys' fees in the amount of $150,000. Class counsel shall divide the award in a manner that is consistent with the percentage of the requested lodestar ($204,207) for which each firm was responsible.

### B. Litigation-Related Expenses

The court has approved reimbursement of litigation-related expenses of approximately $30,000 when a review of the proceedings did not suggest any irregularities in that amount. *Tarlecki*, 2009 WL 3720872, at *5. The records do not indicate any irregularities in the litigation expenses. Reimbursement of litigation-related expenses of $32,595.14 is reasonable. The court approves plaintiff's requested litigation-related expenses of $32,595.14.

### C. Plaintiff's Incentive Award

In the case at bar, plaintiff requests an incentive award of $4,000. Docket No. 48 (Mot. for Attorneys' Fees) at 9. In this district, incentive payments of $5,000 are presumptively reasonable. See *Hopson v. Hanesbrands Inc*, No. 08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (Laporte, M.J.). The court has approved incentive awards of $4,000. *Tarlecki*, 2009 WL 3720872, at *5. Plaintiff has supplied substantial documentation regarding the time he spent in moving this case forward as its class representative. *See* Talley Dec., Exh. C (Simon Dec.). The court finds that plaintiff's requested class representative incentive award of $4,000 to be reasonable, and approves a $4,000 an incentive award for Simon.

CONCLUSION

For the reasons discussed above, plaintiff's motion for final approval of the class settlement is GRANTED. Plaintiff's motion for attorneys' fees, costs and an incentive award is also GRANTED. Class counsel is awarded $150,000 in attorneys' fees and $32,595.14 in costs. Plaintiff is awarded a $4,000 incentive award.

IT IS SO ORDERED.

Dated: April 30, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California